# PUBLIC REDACTED VERSION OF DOCUMENT CONDITIONALLY FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARIDAN STILES and STILES 4 U, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WALMART INC., and AMERICAN INTERNATIONAL INDUSTRIES, <br><br> Defendants. | Case No. 1:20-mc-47 <br><br> Case No. 2:14-cv-02234-MCE-DMC <br> (pending in the Eastern District of California) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO COTY INC.'S MOTION FOR A PROTECTIVE ORDER TO QUASH PLAINTIFFS' SUBPOENA**

February 4, 2020

Plaintiffs Sharidan Stiles and Stiles 4 U, Inc. (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to Coty Inc.'s ("Coty") Motion for Protective Order to Quash Plaintiffs' Subpoena (the "Motion").

## INTRODUCTION

Coty is at the center of a lawsuit pending in the Eastern District of California (the "*Stiles* Action") involving a price fixing conspiracy that includes Walmart and several of its major suppliers, including Coty. The lawsuit concerns Walmart's category management program, a program through which Walmart involves its largest suppliers in its pricing, product selection, and shelving decisions for various categories of products. Coty, in conjunction with Defendant American International Industries ("AI") and other co-conspirators operating in Walmart's beauty-related category of products, openly shared prices and decided which of their competitors would be allowed to occupy Walmart's shelves alongside their own products. Together, Walmart and its suppliers, among other things, (a) used price information to manufacture pretext to "delete" Plaintiffs' products from Walmart's shelves, (b) cloned Plaintiffs' leading product at a penny below plaintiffs' costs (based on price and cost information that none of Plaintiffs' direct competitors should have had access to), and (c) blackballed Plaintiffs from selling their products at other major retailers in the United States.

The contours of this scheme first emerged during discovery, when documents produced alarmingly revealed virtually unfettered price sharing among horizontal competitors—a *per se* violation of the antitrust laws. Coty, in addition to sharing prices with its competitors, helped Walmart manufacture the pretext used to exclude Plaintiffs' products from Walmart's shelves. Coty is thus not only relevant to the *Stiles* Action; its conduct is at the heart of the matter.

Coty nonetheless moves to quash a subpoena seeking a 30(b)(6) deposition on several topics that are incontrovertibly germane to the price fixing scheme and Coty's participation in

1

category management programs at U.S. retailers, including at Walmart. In an apparent attempt to obstruct all discovery into the scheme, Coty advances the unsuccessful argument previously made by its co-conspirator Walmart in the *Stiles* Action. That is, Coty argues that because a motion to join Coty and others as parties in the *Stiles* Action was denied without prejudice for procedural reasons, all of its conduct is somehow outside of the scope of discovery. The magistrate judge in the *Stiles* Action granted Plaintiffs' request for additional depositions in the *Stiles* Action over Walmart's *same* objection. The argument had no basis then, and it borders on frivolous now, asserted again before this Court. Indeed, there is no question that nothing in the Court's decision to deny leave to join additional parties even remotely passed on the merits of Plaintiffs' claims against third-party Coty, Defendant Walmart, or any other co-conspirator.

Once Coty's gambit to take a second run at Walmart's failed arguments is set aside, the only substantive objections left are vague, boilerplate and unsubstantiated relevance and burden objections. None of that is remotely enough for a protective order.

In a transparent attempt to manufacture controversy, Coty makes two meritless procedural arguments. Specifically, it makes much of an initial failure to tender witness fees—which was indisputably cured. Coty has nothing to say about the cure. Coty also disingenuously argues about the reasonableness of the deposition's notice date—which it never sought to change despite invitations to do so. In any event, the noticed deposition date was not unreasonable at all under the well-established law of this district. All of these procedural excuses are transparently meritless.

There is no basis for Coty to resist discovery, let alone a basis upon which it could apply to this Court for a protective order. The motion should be denied.

## BACKGROUND

### A. The Stiles Action and the Revelation of the Beauty Accessories Cartel

Plaintiffs assert, among other things, claims under Section 1 of the Sherman Act, the California Cartwright Antitrust Act, and for patent infringement in the underlying *Stiles* Action pending in the Eastern District of California.[1] Plaintiff Sharidan Stiles is the inventor of the Stiles Razor, an innovative personal styling razor sold through her company, Stiles 4 U, Inc. (*See* Ex. A[2] (Fourth Am. Complaint ("FAC")) ¶ 17.)

Beginning in 2007, Plaintiffs sold their razors through Walmart and did so profitably for nearly six years. (*See id.* ¶¶ 22-48.) Then, without any explanation, Plaintiffs were told in 2012 that their products were not selling and were being "deleted" from Walmart's shelves. (*Id.* ¶ 48.) All the while, as discussed more fully below, Walmart was working closely with its largest suppliers, who controlled Walmart's shelves through a program in which Walmart delegates pricing and product selection to suppliers, called "category management," to clone Plaintiffs' products using Stiles's confidential price and cost information. █████████████████

████████████████████████████████████████

████████████████ Those same suppliers helped Walmart manufacture the pretext needed to eliminate Stiles from Walmart's shelves as well as from the shelves of other retailers for which the same suppliers manage category advisor programs.

---

[1] *Stiles* v. *Walmart, Inc. et al.*, (E.D. Cal. Case No. 2:14-cv-02234-MCE-DMC) ("*Stiles*").

[2] All citations to "Ex. __" reference the exhibits annexed to the concurrently filed Declaration of Yavar Bathaee in Support of Plaintiffs' Opposition to Coty's Motion to Quash, dated February 4, 2020 (the "Bathaee Decl.").

After Rule 12 motion practice, discovery commenced, and in May 2019, yielded several stunning revelations. Most notably, Walmart, through its category advisor program, had allowed its top suppliers who served as "category managers" for Walmart's beauty accessories to exchange price information, including forward prices. Walmart relied on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### B.   Coty's Involvement with the Price Fixing Conspiracy

Coty is part of this cartel and a direct participant in the scheme to share prices. Coty, along with other Walmart suppliers, AI, and Pacific World Corporation ("PWC"), all of whom competed directly with Stiles, extensively shared prices under the coordination of Walmart and the aegis of its category management program. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Coty and PWC, two competitors, were using such price information to decide among themselves to delete other competitors' products from Walmart. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

███████████████████████████ The discovery documents also show that Coty worked with Walmart directly to make inventory decisions. ████████████████████████████████
████████████████████████████████████████████████████████████████████

In September 2011, Walmart, Coty, AI, and PWC weaponized the information they exchanged as part of the category advisor program. Walmart's Esther Gifford, who served as Buyer for the Beauty and Cosmetic categories at Walmart, enlisted the assistance of Coty during the line review for the 2012 Beauty modular, asking Coty:

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████



FAC ¶ 48.)

### C. The *Stiles* Court found Coty's role as a Category Advisor relevant and within the scope of discovery.

On June 28, 2019, shortly after Plaintiffs obtained and reviewed the documents exposing Coty's (and others') role in the antitrust conspiracy, Plaintiffs moved the *Stiles* Court for leave to join Coty, PWC, and Procter & Gamble Co. ("P&G") as additional defendants (the "Joinder Motion"). (*See* Ex. K. (Joinder Motion).)

6

On November 19, 2019, the *Stiles* Court—without addressing the merits of the allegations against Coty, PWC and P&G and without prejudice—denied the motion on purely on procedural grounds. (*See* Ex. L (two-page order denying the Joinder Motion).) There was no holding whatsoever as to the claims against Coty, PWC or P&G, and there was no discussion by the Court as to the relevance of evidence pertaining to the three suppliers.

Plaintiffs requested the *Stiles* Court's leave to take additional depositions on December 6, 2019. In the request, Plaintiffs explained to the magistrate judge presiding over the *Stiles* Action that the antitrust conspiracy extended beyond Defendants and included Coty, which meant that a deposition of a Coty representative was necessary. Plaintiffs explained:

> Through discovery, Plaintiffs learned that Walmart employed representatives from other product suppliers—who were also direct competitors of Stiles—to serve as category advisors in Walmart's category advisor program. Category advisors received access to marketing and sales data for all products within their assigned category. Category advisors from [Coty, PWC, and P&G] each advised Walmart in product selection and price point, among other determinations, in relevant product categories at Walmart where the Stiles Razor was carried, and therefore may have relevant information related to Plaintiffs' claims.

(Ex. M at 3 (Motion to Compel Additional Depositions and/or Leave to Take Depositions in Excess of 10).) Walmart objected, arguing that the denial of the motion for joinder somehow rendered evidence pertaining to Coty irrelevant or out of the scope of discovery. The court granted Plaintiffs motion over that objection and with no limitation. (*See generally* Ex. N (Order granting additional depositions).)

Coty now appears before this Court pressing virtually identical arguments, making a second attempt at Walmart's failed argument in a different court.

7

### D.   The Coty Subpoena

On January 7, 2020, Plaintiffs timely served Coty with a subpoena to testify at a Rule 30(b)(6) deposition (the "Subpoena") preliminarily designating January 21, 2020 as the deposition date—14 days after service. (*See* Ex. O (Subpoena); Ex. P (proof of service).) The Subpoena[3] identified ten particularized topics on which deposition testimony Plaintiffs are seeking.

On January 14, 2020, Coty's counsel informed Plaintiffs' counsel of its unilateral decision not to appear for the January 21 deposition—counsel would not even consider an alternate date. (Bathaee Decl. ¶ 4.) Indeed, despite Plaintiffs' counsel's repeated requests, Coty would not even engage in discussions about an alternate date even after it served its responses and objections. (Ex. S at 3 (January 17, 2020 Email from Dan Terzian); *see also id.* at 1, 2 (January 20, 2020 Emails from Dan Terzian); Ex. T at 5, 9 (January 22, 2020 Email from Dan Terzian).) Coty served its responses and objections to the Subpoena on January 21, 2020, objecting to each and every topic in boilerplate fashion on grounds including, relevance, burden, attorney-client privilege, and scope of timeframe. (*See generally* Ex. Q (Coty's objections and responses to the Subpoena).)

On January 23, the parties met and conferred, and agreed to adjourn the deadline to respond to the Subpoena to January 27, 2020. (Bathaee Decl. ¶ 5.) On January 24, Coty's counsel agreed to produce a witness on a ***single*** topic: The Stiles Razor, including any communications about the Stiles Razor. (Ex. T at 2-3 (January 24, 2020 Email from Robert Friedman).) Plaintiffs' counsel rejected Coty's proposal, and Coty filed the instant Motion.

---

[3] Plaintiffs also served Coty with a subpoena to produce documents related to these topics. Coty is also refusing to cooperate with that document subpoena, and Plaintiffs are filing a separate motion to compel production of documents requested in that subpoena.

8

**ARGUMENT**

The Federal Rules establish a broad scope of permissible discovery. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED R. CIV. P. 26(b)(1). "Indeed, the information need not be admissible as long as it is reasonably calculated to lead to the discovery of admissible evidence." *Heller* v. *City of N.Y.*, 2008 WL 2965474, at *2 (E.D.N.Y. Apr. 11, 2018). "A district court has wide latitude to determine the scope of discovery." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). The standards of Rule 26 apply to third-party subpoenas as well as to discovery from parties. *Citizens Union of the City of N.Y.* v. *Att'y Gen. of the State of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

While a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," the party seeking the protective order has the burden of demonstrating that good cause exists for issuance of the order." (*Walker* v. *Carter*, 2015 WL 12765380, at *2 (S.D.N.Y. Oct. 21, 2015) (Carter, J.). Furthermore, "the party moving for a protective order must cite particular and specific facts rather than conclusory allegations to establish good cause for protection." *Rofail* v. *United States*, 227 F.R.D. 53, 55 (E.D.N.Y. 2005).

**I.  The Subpoena's topics are highly relevant, and there is no undue burden.**

The Subpoena sought testimony on ten particularized topics related to Coty's role as a category advisor, including, among other topics:

- Topic No. 2: Coty Communications with Walmart Beauty category advisors, relating to price, cost, add/delete/carryover decisions for products in the Beauty Category;

- Topic Nos. 3, 4: Coty's role and nature of participation as a category advisor for Walmart or any other retailer;

- Topic No. 5: The interactions between Coty employees serving as Walmart category advisors and Coty employees serving as category advisors for other retailers;

- Topic Nos. 6, 7: The rules and safeguards governing Coty's participation in the Walmart category advisor program, and Coty's policies and procedures to prevent violations of laws;

- Topic No. 9: Stiles or any product by Stiles.

These topics are directly relevant to Plaintiffs' claims. As described above (at pp. 4-6, *supra*) Documents produced in discovery show that Walmart's category advisory program served as the instrumentality of Defendants' antitrust conspiracy. Indeed, Walmart's category advisors were typically the leading suppliers within that category and were given virtually unfettered access to price data about direct competitors. They made, with Walmart's imprimatur, critical decisions regarding which products Walmart would shelve, how much of those products Walmart would shelve, and where the products would be placed on the shelves.

Coty was an active participant in stifling the sales of the Stiles Razor and developing the pretext to eliminate the product from Walmart stores. As discussed above (at pp. 4-5, *supra*), Coty was actively involved in the decision-making process for what products were added or deleted in the Beauty category, including the deletion of the Stiles Razor. The topics in the Subpoena relate directly to this as well as the contours, constraints, and workings of Walmart's category advisor program, including Coty's role in that program.

Coty has nothing specific to say about the relevance of the discovery sought. Instead, it offers this Court only an objection that is strikingly similar to Walmart's failed argument in the *Stiles* Action to prevent the taking of additional depositions. That is, Coty argues that because the *Stiles* Court denied leave to join Coty and other suppliers as defendants in that action—without prejudice and without addressing the merits of the proposed claims—that it somehow ruled Coty

irrelevant to the Sherman Act Section 1 and Cartwright Act claims currently before the Court. In support, Coty misleadingly characterizes the order as "den[ying] Plaintiffs' attempt to add [the] theory" of Coty's role in the horizontal agreement. (ECF No. 3 at 7.) That is **entirely false**—the order says no such thing. (*See generally* Ex. N.)

More importantly, this argument is an attempt by Walmart and its supplier and co-conspirator Coty to make the same unsuccessful argument in a different court, hoping to achieve a different result. There can be no dispute that Magistrate Judge Cota in the *Stiles* Action provided leave for additional depositions over the same objection by Walmart. (*See* Ex. R at 34-38 (Walmart's opposition brief to Plaintiffs' motion for additional depositions).) It was unconvincing then before the *Stiles* Court, and it's disingenuous now before this Court.

Coty next attacks only two out of the ten topics and merely states in conclusory fashion that "[t]he other topics suffer a similar fate." (ECF No. 3 at 7-8.) To begin with, general objections—devoid of any substance—to deposition topics do not come close to justifying a protective order. The law is clear that "the party moving for a protective order must cite particular and specific facts rather than conclusory allegations to establish good cause for protection." *See Rofail*, 227 F.R.D. at 55. No such facts are cited here as to any topic.

Even as to the two topics to which Coty more directly objects, there is no basis for a protective order. Coty argues that those topics are inappropriate because they seek testimony concerning Coty's role in the category management programs of retailers other than Walmart. (ECF No. at 8.) The Stiles Action, however, involves allegations that Stiles was not only banned from Walmart's shelves, but was blackballed from other U.S. retailers as well. (*See* FAC ¶ 121.) Coty and its other co-conspirators would have accomplished this by exerting their power over other category management programs.

Coty's final objection is to the burden of producing testimony. Coty does not substantiate that supposed burden in any way. (*See* ECF No. at 6-8.) Of course, a cursory assertion of undue burden is not enough to resist discovery—not even close.

## II.  The Subpoena is valid.

Coty also challenges the propriety of service and the sufficiency of the time given to respond. Those challenges are meritless.

1.  Any purported deficiency in service has been cured.

In its Motion, Coty argues—for the first time—that service was improper because Plaintiffs did not accompany the Subpoena with witness fees. (ECF No. 3 at 5.) As an initial matter, despite multiple correspondences and meet and confer calls, Coty did not raise this service issue at all to Plaintiffs' counsel to provide them with notice. (*See* Bathaee Decl. ¶ 6.) If they had, this technical issue would have been addressed and cured immediately.

In any event, Plaintiffs did in fact cure the purported deficiency after Plaintiffs' counsel learned about the deficiency on January 27, 2020 when Coty filed this Motion. Moreover, out of an abundance of caution, Plaintiffs' counsel again served the Subpoena on February 3, 2020 accompanied by a check for the witness's attendance and mileage reimbursement. (Bathaee Decl. ¶ 6; Ex. Y (February 3, 2020 Proof of Service).)

In light of the fact that the deficiency has been cured (if it even existed to begin with), there is no plausible basis to quash to subpoena. *See e.g.*, *WhitServe LLC* v. *Computer Packages, Inc.*, 2013 WL 6169280, at *3 (D. Conn. Nov. 22, 2013) (court did not quash subpoena for inadequate fee where issuing party took prompt action to cure deficiency); *PHE, Inc.* v. *Dep't of Justice*, 139 F.R.D. 249, 255 (D.D.C.1991) (finding, "to the extent that the failure to accompany the Rule 45 subpoena . . . with a check rendered the subpoenas technically defective, the subsequent tender of the check corrected any deficiency . . . ."); *RPM Pizza, LLC* v. *Argonaut Great Cent. Ins. Co.*, 2014

WL 258784, at *1 (M.D. La. Jan. 23, 2014) ("deficiency [of not tendering witness fees] alone is not sufficient to quash the subpoena since it could have been readily cured, and there is no suggestion that Domino's did not receive actual notice of the deposition."); *Adams* v. *Dolgencorp, LLC*, 2012 WL 1867123, at *1 (M.D. La. May 22, 2012) (finding that sending payment to the non-party days after the subpoena was served cured any alleged defect in advance of the scheduled deposition) (citing *Meyer* v. *Foti*, 720 F.Supp. 1234, 1244 (E.D.La.1989)).

In any event, even if the subpoena is quashed, Coty's other objections would bring the parties precisely to the same impasse in very short order.[4] Nothing would be solved.

2. The Subpoena provides a reasonable time to respond.

Coty argues that the Subpoena did not provide Coty with reasonable time to respond. (ECF No. 3 at 5-6.) Not so. By Coty's own admission, "courts have held **fourteen days from the date of service**" to be presumptively reasonable time to comply with a subpoena. (ECF No. 3 at 3 (citing *Brown* v. *Hendler*, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011)) (emphasis added)); *see also* FED R. CIV. P. 45(d)(2)(B) ("The objection must be served **before the earlier** of the time specified for compliance or 14 days after the subpoena is served." (emphasis added)).

Here, the Subpoena was served to Coty's registered agent on January 7, 2020 (*see* Ex. P) and Plaintiffs preliminarily designated January 21st as the deadline (*see* Ex. O) to respond to the Subpoena—14 days after date of service and well within the time courts have found reasonable.[5]

---

[4] As discussed in Section III, *infra* at n.5, even if the Court determines that service was effectuated on February 3, 2020 instead of January 7, 2020, the Subpoena is still timely, and Coty is not prejudiced.

[5] When Plaintiffs served the Subpoena the second time on February 3, 2020, they designated a February 11, 2020 response deadline. On January 31, 2020, Plaintiffs sent a courtesy copy of the Subpoena to Coty's counsel and informed counsel that the contents of the Subpoena are identical to the previously served Subpoena, which they received on January 14, and is merely served to

13

Coty's argument that its counsel did not receive the Subpoena until January 14 is unavailing and simply irrelevant.

The plain language of Rule 45 leaves no doubt that the reasonableness of the time to respond is determined from the date of service, not the date that counsel received the subpoena, as Coty suggests. Moreover, Plaintiffs' counsel repeatedly represented to Coty's counsel that they were willing to reschedule the deposition to a later date. (*See* Ex. S at 3 (January 17, 2020 Email from Dan Terzian); *see also id.* at 1, 2 (January 20, 2020 Emails from Dan Terzian); Ex. T at 5, 9 (January 22, 2020 Email from Dan Terzian).) Coty did not even attempt to discuss setting the deposition for a later date, and instead simply asserted that it would not provide a witness for the deposition. Thus, Coty's argument that the Subpoena (or Plaintiffs' counsel) did not provide sufficient time to respond is merely disingenuous pretext for stonewalling discovery.

---

cure any purported financial deficiencies. (Bathaee Decl. ¶ 6.) As such, by Coty's own admission, it has been on notice of the Subpoena since at least January 14 and thus even assuming *arguendo* that service was effectuated on February 3, 2020, the response deadline of February 11, 2020 is reasonable. *See e.g., Mercexchange, LLC* v. *eBay, Inc.*, 2007 WL 485224, at *1 (D. Conn. Feb. 12, 2007) (12 days to respond was reasonable); *Mariner Health Care, Inc.* v. *Indemnity Ins. Co. of North America, Inc.*, 2005 WL 44521, * 2 (E.D. Penn. Jan. 7, 2005). Moreover, Plaintiffs' counsel has repeatedly informed Coty that it is willing to schedule the deposition at a later date to provide Coty with reasonable time to prepare for the deposition. (*See* Exs. S & T.) Thus, the Court should deny the Motion. If the Court finds the time to respond unreasonable, the appropriate remedy is to extend the time to respond. *See Wiwa* v. *Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright"); *Flanagan* v. *Wyndham Int'l. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) ("A court should be loathe to quash a subpoena if other protection of less absolute character is possible").

## CONCLUSION

For the foregoing reasons, the Court should deny Coty's motion for a protective order quashing the Subpoena.

Dated: New York, NY
Feb. 4, 2020

Respectfully submitted,

By: s/ *Yavar Bathaee*
Yavar Bathaee
yavar@piercebainbridge.com
**Pierce Bainbridge Beck Price & Hecht LLP**
277 Park Avenue, 45th Floor,
New York, NY 10172
tel: (212) 484-9866
fax: (646) 968-4125

*Attorneys for Plaintiffs Sharidan Stiles and Stiles 4 U, Inc.*

## **TECHNICAL FAILURE STATEMENT**

Plaintiffs submit this statement pursuant to this District's Electronic Case Filing Rules & Instructions, Section 11. Plaintiffs encountered technical failures with the ECF system when filing their memorandum of law in opposition to Coty's motion to quash and the related documents. Despite Plaintiffs' repeated attempts to upload the documents, the ECF system would not upload the files saved as PDF files. In order to remedy the technical failure, Plaintiffs printed and scanned the documents and uploaded them as soon as possible. As a result of the ECF system's technical failures, Plaintiffs' filing was untimely by about one hour.

Dated: 2/5/2020

*s/Yavar Bathaee*
Yavar Bathaee
